## GEO. W. HELME v. MIDDLETON, HARPER & CO.

In a transaction by which a draft is substituted in the place of a note, to constitute a novation of the debt, it must be established clearly that it was the intention of the parties that the draft should be taken in absolute payment of the note.

Where at the maturity of a draft, the firm on which it was drawn in the city of New Orleans had no place of business, and could not be found there, and had then ceased to exist as a firm. *Held:* that a protest was unnecessary to bind the drawer.

APPEAL from the Fourth District Court of New Orleans, *Price*, J. *Clark & Bayne*, for plaintiff. *Benjamin, Bradford & Finney*, for defendants and appellants.

COLE, J. The defendants being indebted to *J. H. Palmer & Co.*, gave to them as collateral security two notes of *J. B. Harper & Son.*, and upon the 6th of June, 1853, the defendants agreed to allow *Palmer & Co.*, to be paid the amount of the notes out of a judgment, in case it should be rendered in their favor, in a suit instituted by them against the Memphis Insurance Company.

Afterwards the following transaction took place between the parties, as is evidenced by their receipt :

"Received, Bayou Sara, April 23d, 1855, from *Messrs. J. B. Harper & Son*, their draft on *Messrs. B. F. Shields & Co.*, New Orleans, La., for $972 32 in full of all demands, in case said draft is accepted and and acceptable to the representative of *J. H. Palmer & Co.; * also order on *Messrs. Bonford & Finney*, for control of the suit of *Middleton, Harper & Co. v. Memphis Insurance Co.*, and when suit is brought to a successful termination and the money made, we agree to return to said *J. B. Harper & Son*, the aforesaid draft, notes, &c., and the balance due from insurance, less costs for collection, costs etc.,

J. H. PALMER & CO.,
A. N. BAXTER."

At same time of execution of this receipt, the following order was given :
To Messrs. Bonford & Finney.

Please give in charge the suit *Middleton, Harper & Co. v. Memphis Insurance Co.*, to *Wm. M. Abernethy, Esq.*, executor of *J. H. Palmer*, and his receipt will be good to you.                   J. B. HARPER & SON.

Bayou Sara, April 23d, 1855.

The draft on *Shields & Co.*, was not paid at maturity, and was returned to *J. B. Harper & Son*, whereupon plaintiff, who is the receiver of *Palmer & Co.*, instituted this suit, in which he averred that more than enough had been collected from the judgment against the Memphis Insiurance Co., to pay the two notes of *J. B. Harper & Son*, and he prayed for judgment against *Middleton, Harper & Co.*, and their attorneys in the suit against the Insurance Co. No service of citation was made upon the attorneys, as they agreeed to pay, if judgment should be rendered against *Middleton, Harper & Co.*, and they were willing to·have paid without suit, but were prevented by their client.

There was judgment for plaintiff upon the amount of the two notes, and defendant has appealed.

It is contended by defendant that the draft on *Shields & Co.*, was given in payment, and that the original debt was novated by the receipt of April 23d, 1855.

There may be some obscurity about this receipt, but it is clear that novation was not created thereby of the two notes.

If it had been the intention of the parties that the draft on *Shields & Co.* should be taken in absolute payment of the two notes, and that the draft was substituted in their place, then there would have been no reason for giving *Palmer & Co.* the control over the suit against the Insurance Company, and for stipulating that when the money was made out of this suit, then, that the draft, notes, etc., should be returned to *Harper & Son.* The draft could not have been given in absolute payment, because in a certain event, it was to be returned.

Novation must be clearly established.

The conduct of the parties corroborates our interpretation of this receipt.

The return of the notes was not required. The draft on *Shields & Co.*, was on the 11th February, 1856, returned to *Messrs. Harper & Son,* in a letter, in which it was stated that plaintiff held the draft only as collateral.

The statement is not contradicted until the 28th of December, 1857, when the answer is filed.

We would here remark, that *J. B. Harper* was formerly a member of the firm *Middleton, Harper & Co.*

It is also contended that defendants are released, because the draft was not protested, but it is established that *Shields & Co.*, had, at the maturity of the draft, no place of business in New Orleans, and that they could not be found, and that the house had ceased to exist before the maturity of the draft.

Even if *Shields & Co.* were indebted to *Harper & Co.*, at the time of the maturity of the draft, it is evident from the record, that the money could not have been made out of them.

The long silence of *Harper & Son,* after the return to them of the draft, shows that they did not attach any importance to the failure of the protest.

There is, however, an error in the judgment.

The court has omitted to notice credits of March 18th, 1854, upon the note of $579 61, amounting to $300 84.

The two notes were evidently to be accepted as full satisfaction for the original debt with the additional guaranty of the obligation of the defendants to be personally responsible for the same, and they must be deemed to have been so taken and assumed, subject to a deduction for the endorsed credits.

One of the credits asked for by appellant cannot be allowed, for it is on the original note, represented by the two notes now sued upon.

It is, therefore, ordered, adjudged and decreed, that the judgment be amended by making the sum of $579 61, mentioned therein, subject to a credit of $300 84 paid on the 18th March, 1854; that the judgment so amended be affirmed, and that appellee pay the costs of appeal.